UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYARD DEVELL DAVIS, Plaintiff, v. JEFF LYNCH, et al. Defendants. | No. 2:22-cv-02054 AC P<br>ORDER |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief under 42 U.S.C. § 1983. The case is before the undersigned pursuant to the consent of the parties. ECF No. 54. Plaintiff alleges that defendant Jian Ma, M.D., a physician and surgeon at California State Prison-Sacramento ("CSP-Sacramento"), acted with deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment rights in late 2021 and early 2022. ECF No. 1 at 8-9, 11, 21-22. Defendant has filed a motion for summary judgment (ECF No. 46), which plaintiff has opposed (ECF Nos. 56, 59). For the reasons stated below, defendant's motion for summary judgment (ECF No. 46) is granted.

I. BACKGROUND

A. Allegations of the Complaint

Plaintiff is a California inmate under the authority of the California Department of Corrections and Rehabilitation ("CDCR"), who challenges medical care he received while

incarcerated at CSP-Sacramento. ECF No. 1. On screening pursuant to 28 U.S.C. § 1915A(a), the court found that only plaintiff's Eighth Amendment claim alleging deliberate indifference by defendant Dr. Ma was adequate for service. ECF No. 10. Rather than amend his complaint to address pleading deficiencies identified by the court as to other issues, plaintiff elected to proceed against Dr. Ma and voluntarily dismiss all other claims and defendants. ECF Nos. 14, 15.

In his verified complaint, plaintiff alleges in pertinent part as follows. Plaintiff underwent surgery at San Joaquin General Hospital ("SJGH") in June 2021 to remove several foreign objects, including wires, which plaintiff had ingested while feeling suicidal. Id. ECF No. 1 at 5-6. After surgery, plaintiff was transferred back to CSP-Sacramento where he was treated by Dr. Ma. X-rays taken upon plaintiff's return on July 8, 2021, showed a foreign object in his lower right abdomen, which SJGH hospital staff claimed to have extracted. Id. at 19. This object was a wire that had previously been lodged in plaintiff's throat, which he had told hospital staff he could feel "move lower almost going into my digestive system" shortly before the surgery. Id. at 18-19.

Dr. Ma ordered an X-ray on October 8, 2021, after plaintiff complained of lower stomach pain. The X-ray confirmed the presence of a foreign body in plaintiff's pelvis. Id. at 21. Dr. Ma made "false statements trying to cover up the negligence by saying the foreign body [had] been there since 2017." Id. at 8.[1] Dr. Ma also tried to convince plaintiff that there was no foreign object in his abdomen during follow-up appointments on October 27, 2021, November 12, 2021, and December 6, 2021. Id. at 21. After Dr. Ma ordered additional imaging on January 12, 2022, defendant continued to deny the presence of a foreign body, "even generating a document given to [plaintiff] from [defendant]" that falsely showed no foreign body in my abdomen "to cover up the negligence." Id. at 9-10, 21-22. After plaintiff swallowed additional metal objects in March 2022, imaging confirmed the wire from his throat was still in his pelvis. Id. at 9-10, 22. Dr. Ma was aware of this fact but deliberately tried to cover up the presence of the object, including denying that plaintiff's stools had tested positive for blood, causing him physical injury and "unnecessary and wanton infliction of pain." Id. at 23.

[1] Plaintiff denies this is possible because "in 2017 I swallowed only glass. No wire-like object until 6.24.21." Id. at 8.

By way of relief, plaintiff seeks damages and an injunction ordering surgery to remove the object. Id. at 26.

B. Procedural History

During the discovery period, plaintiff filed a motion for summary judgment against a dismissed defendant, which the court denied without prejudice to the filing of a dispositive motion seeking relief against a proper defendant. ECF No. 27. The court subsequently granted several requests by both plaintiff and defendant for extensions of the discovery period and dispositive motion deadlines. ECF Nos. 28-29, 35-36, 37-38, 41-42, 43-44.[2]

On September 2, 2025, defendant filed the instant motion for summary judgment on the merits of plaintiff's Eighth Amendment claim. ECF No. 56. The court directed plaintiff to respond to defendant's motion for summary judgment by no later than October 23, 2025. ECF No. 50. Plaintiff filed briefs in oppositions on October 14, 2025, and October 21, 2025. ECF Nos. 56, 59. Defendant filed a reply on November 18, 2025. ECF No. 63.

II. MOTION FOR SUMMARY JUDGMENT

A. Defendant's Motion for Summary Judgment

Defendant Jian Ma seeks summary judgment on the grounds that plaintiff's Eighth Amendment deliberate indifference claim is without merit. ECF No. 46. Specifically, defendant contends that he and other medical providers at CSP-Sacramento provided appropriate medical care to plaintiff over the course of several years, and that undisputed evidence shows that the foreign object of which plaintiff complains was, in fact, present in his body since 2017. Id. at 6. Defendant further denies fabricating any medical records or covering up the fact that there was an object appearing on plaintiff's scans in June 2021, or that plaintiff suffered any pain or harm resulting from his course of treatment. Id. at 16.

In support of his dispositive motion, defendant has attached (1) defendant's statement of undisputed facts ("DSUF") (ECF No. 46-1); (2) a copy of the Rand warning issued to plaintiff on

[2] In January 2025, the court vacated the discovery and dispositive motion deadlines for a short period pending the outcome of plaintiff's competency proceedings in a state court criminal matter. ECF No. 38. After plaintiff was found competent, the undersigned reset these deadlines. ECF No. 40.

September 2, 2025 (ECF No. 46-2); (3) a declaration from defendant Ma with plaintiff's relevant medical records attached (ECF No. 46-3); (4) a declaration from EHRS medical records expert Dr. M. Mindoro (ECF No. 46-4); and (5) a declaration from Assistant Attorney General Audra C. Call with additional medical records and plaintiff's deposition transcript excerpts attached (ECF No. 46-5).

B. Plaintiff's Opposition

Plaintiff filed two documents in opposition to defendants' motion for summary judgment. ECF Nos. 56, 59. In the first, plaintiff reiterates his belief that the objective test results from his X-rays and CT scans reflect presence of a foreign body in his pelvis. ECF No. 56 at 3. He also reiterated that defendant documented that plaintiffs' fecal test was negative for blood in his medical record in November 2021, but this was inaccurate. Id. at 4-5. Plaintiff asserts that defendant acted maliciously and sadistically by falsely documenting his test results. Id. at 6.

In plaintiff's second opposition brief, dated October 21, 2025, he asserts that he has learned no surgery was ever performed to remove a foreign body as plaintiff previously had been told, as the surgery was actually canceled. ECF No. 59 at 2. He cites to defendant's progress notes dated November 12, 2021, as "the smoking gun to plaintiff's entire claim," as this note confirms the continued presence of the foreign body in his pelvis. ECF No. 59 at 2 (citing ECF No. 59 at 3-5).

III. GOVERNING LEGAL STANDARDS

A. Summary Judgment

In general, summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To meet this burden, the opposing party is

required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

B. Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200-01 (9th Cir. 1989)), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

"While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood, 900 F.2d at 1334. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 837 & n.5 (1994). It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 843 n.8. Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.

A difference of opinion between an inmate and prison medical personnel—or between

medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations omitted). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

## IV. UNDISPUTED FACTS

### A. Threshold Issues

At the outset, the court notes that plaintiff has failed to file a separate document in response to defendant's statement of undisputed facts (ECF No. 46-1) that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).[3] The facts are therefore deemed undisputed except as otherwise discussed. Additional facts have been taken from plaintiff's verified filings as appropriate.

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps ... detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should

---

[3] Defendant's submission includes 90 undisputed facts, which the court will not re-produce verbatim although many are referenced in the analysis of plaintiff's claims below. See ECF No. 46-1.

not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, given plaintiff's status as a pro se prisoner, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in plaintiff's complaint (ECF No. 1) or his opposition briefs (ECF Nos. 56, 59) which have evidentiary support in the record will be considered. The facts which follow are undisputed by the parties or have been determined by the court to be undisputed by competent evidence.

B. Objective Evidence of "Wire-Like" Object on X-rays Prior to June 2021

Plaintiff has a history of ingesting foreign objects. Relevant here, and as detailed below, plaintiff's medical records reflect that a 3 cm "wire-like" metallic object has appeared on his abdominal X-rays since at least October 2017.

After he ingested several foreign objects, including pieces of glass, plaintiff had an X-ray on October 25, 2017. ECF No. 46-1 (DSUF 4). The X-ray results reflected "[foreign body] ingestion 2 days ago. Assess passage. PT. stated to have ingested 3 pieces of glass on Saturday 10-21-17." Id. (DSUF 5). The findings further stated that, "A sharp tipped wire-like foreign body projects over the right pelvis. This foreign body measures approximately 3 cm in length." Id.; see also ECF Nos. 46-4 (Mindoro Decl. ¶ 10), Ex. S (October 25, 2017, X-ray final report); Nos. 46-5 (Call Decl.), EE (Plaintiff Deposition ("Plaintiff's Dep.") at 52:15-21, 142:2-3 (confirming his memory of the 2017 X-ray after he reported ingesting pieces of glass).[4]

On August 14, 2019, plaintiff had another X-ray following his reports of abdominal pain. ECF No. 46-1 (DSUF 8). The results from the August 14, 2019, X-ray were: "Three radiopaque foreign bodies are identified. Two razor-blade fragments are projected over the descending

---

[4] Contrary to plaintiff's suggestion that defendant altered or falsified his medical records, CDCR has presented substantial evidence that Dr. Ma could not alter, change, or add information to an inmate's existing medical record without a record of any changes, and there is no indication that Dr. Ma has altered any of plaintiff's past medical records in the EHRS system. ECF No. 46-1 (DSUF 7); ECF Nos. 46-4 (Mindoro Decl. ¶¶ 6-8, 14, 20). Moreover, Dr. Ma was not actively treating plaintiff in 2017, when the object in plaintiff's pelvis was first observed on his X-rays. See also ECF Nos. 46-4 (Mindoro Decl. ¶¶ 10-20); ECF No. 46-3 (Ma Decl. ¶ 4).

colon. A linear metallic foreign body measuring approximately 3.0 cm in length is projected over the rectum." Id. (DSUF 9); see ECF Nos. 46-4 (Mindoro Decl. ¶¶ 16-20), Ex. T (August 14, 2018, X-ray final report). On July 24, 2020, Dr. Afshin Arya noted in plaintiff's medical records, "A foreign body is projected on the patient's right pelvic side which seems to be a wire at 3 cm in size. This has been present [as] early as 10/25/2017." ECF No. 46-1 (DSUF 11); ECF No. 46-5 (Call Decl. at ¶ 4), Ex. BB.

C. Plaintiff's Ingestion of Additional Foreign Bodies on June 24, 2021

On June 24, 2021, plaintiff was housed at CSP – Sacramento. ECF No. 46-1 (DSUF 1). On June 24, 2021, plaintiff swallowed several foreign objects including one piece of metal and 2 long copper wires. ECF No. 46-1 (DSUF 12); ECF No. 1 at 5. Plaintiff was transported to the emergency room at SJGH, which is an independent medical facility not associated with CDCR. ECF No. 46-1 (DSUF 13-14); ECF No. 1 at 5. Upon plaintiff's admission, medical providers at SJGH determined that a wire was lodged in plaintiff's throat and planned a laryngoscopy procedure for the following morning; no surgical intervention was required to remove the other objects. ECF No. 46-1 (DSUF 18.) SJGH records reflect that the wire was successfully removed while plaintiff was under general anesthesia on June 25, 2021, and plaintiff was advised when he woke up that the wire had been removed. ECF No. 46-1 (DSUF 19-22); 46-3 (Ma Decl. ¶ 6), Ex. B; 46-4 (Call Decl.), Ex. BB (Plaintiff's Dep. at 23:23-24:12; 114:9-15).

Although defendant asserts that "a procedure was performed on Plaintiff at SJGH where a laryngoscope was used to remove the wire from Plaintiff's throat," this characterization of the procedure at SJGH does appear to be entirely accurate. See ECF No. 46-1 at 5 (DSUF 19); ECF No. 46-3 (Ma Decl. ¶ 6), Ex. B. Although a laryngoscopy was originally planned to remove the wire, by the morning of June 25, 2021, the wire was no longer visible in plaintiff's throat and was instead removed from plaintiff's duodenum, the upper portion of his small intestines, via an upper endoscopy. ECF No. 46-3, Ex. B at 25-49. A CT scan of his "abdomen/pelvis showed a small radiopaque foreign body in proximal small bowel, no evidence of perforation or obstruction." ECF No. 46-3, Ex. B at 25. A CT scan of plaintiff's neck "showed no foreign body, although X-ray neck showed metallic foreign body over the left lower hypopharynx." Id. The surgical team

determined "no intervention at this time as lower objects are passed the duodenum, *and ENT evaluated with laryngoscope who did not see foreign body and recommended GI consult*." Id. (emphasis added). Additional imaging "showed foreign body in mid abdomen and upon consultation with GI, recommended EGD [esophagogastroduodenoscopy or upper endoscopy] which patient tolerated well. Metal wire was seen in duodenum which was subsequently removed." Id. Specifically, the endoscopy findings reflect that "[u]pon insertion of the scope, a metallic wire with rounded end was seen in the second portion of the duodenum. This was grasped with rat root forceps and removed from the patient." Id. at 27. Treatment notes provide that "[h]is other [foreign bodies that plaintiff ingested] will pass on their own – surgery is not recommending any intervention." Id. at 30. Plaintiff was discharged to follow up with psychiatry at CSP-Sacramento with suicide precautions. Id.; see also ECF No. ECF No. 46-3, Ex. B at 48-49) (Final Report of EGD procedure).

D. Defendant's Subsequent Treatment of Plaintiff at CSP-Sacramento

After plaintiff's inpatient admission at SJGH from June 24 through June 25, 2021, he was transferred back to CSP-Sacramento. ECF No. 46-1 (DSUF 23). Dr. Ma met with plaintiff for a medical visit on June 26, 2021.[5] ECF No. 46-1 (DSUF 23.) Defendant never spoke with treatment providers at SJGH about the care plaintiff had received there, but reviewed plaintiff's medical records reflecting that the wire plaintiff had ingested had been successfully removed. Id. (DSUF 23-25.)[6] During his initial visit with Dr. Ma, plaintiff did not express any concerns that the wire he ingested on June 24, 2021, had not been removed at SJGH on June 25, 2021. Id. (DSUF 27); see also ECF No. 46-3 (Ma Decl. ¶¶ 6-9), Ex. B (SJGH records).

Plaintiff was transferred from CSP-Sacramento to the California Medical Facility

[5] Although defendant previously provided medical services to plaintiff on one occasion in November 2015 for issues unrelated to the current dispute, neither defendant nor plaintiff recall any interactions prior to June 2021. ECF No. 46-3 (Ma Decl.) at ¶ 4; 46-4 (Call Decl.), Ex. BB (Plaintiff's Dep. at 19:1-6).

[6] As noted above, SJGH is an independent medical facility and therefore the medical personnel at SJGH who treated plaintiff are not employees of CCHCS or CDCR. No. 46-1 (DSUF 14). Defendant also denies having any personal connections with any of the providers who treated plaintiff at SJGH. ECF No. 46-3 (Ma Decl. ¶ 7)

("CMF") for psychiatric care on July 27, 2021. ECF No. 46-1 (DSUF 29). Plaintiff's next medical visit with defendant did not take place until October 8, 2021, when Dr. Ma was assigned as plaintiff's primary care provider following his return to CSP-Sacramento Id. (DSUF 30, 32). Plaintiff's fecal immunochemical tests ("FIT tests") from June 2021 and October 2021, which screen stool for the presence of blood, were both negative. Id. (DSUF 33); ECF No. 46-3 (Ma Decl. at ¶ 21, Ex. H).

On October 8, 2021, defendant and plaintiff discussed plaintiff's medical concerns including his history of ingestion of foreign bodies. Id. (DSUF 36). Defendant noted that plaintiff's last abdominal X-ray (a "KUB" X-ray, which is a Kidney, Ureter, Bladder X-ray used to image areas that include the gastrointestinal tract) was on July 12, 2021, and showed a "lineal metallic foreign body in the pelvic region." Id. As plaintiff had no abdominal pain complaints at the time, defendant ordered a chronic care follow-up in six (6) months. Id. When defendant was finalizing his clinic examination note from the visit, he noticed that plaintiff's previous medical provider had ordered another KUB X-ray for that same afternoon – October 8, 2021 – and the results included the same findings as the previous abdominal X-ray from July 12, 2021. Id. (DSUF 37-38); see ECF No. 46-3 (Ma Decl. at ¶¶ 12-14, Ex. D). Defendant determined continued monitoring was the appropriate course of action as plaintiff appeared stable and the object was likely "not inside the Plaintiff's abdominal or pelvic cavity." ECF No. 46-1 (DSUF 38); ECF No. 46-3 (Ma Decl. at ¶ 13).

On October 27, 2021, defendant was scheduled to see plaintiff for a medical visit because plaintiff had recently submitted a "sick call slip" (request for service) reflecting, for the first time, complaints of abdominal pain and concerns about a foreign body he ingested in June 2021. ECF No. 46-1 (DSUF 39). However, plaintiff refused the October 27, 2021, visit. Id. (DSUF 40.) Defendant nonetheless reviewed plaintiff's chart, and documented in his progress notes that plaintiff's October 8, 2021, X-ray following their visit had shown the same wirelike object in plaintiff's pelvic region that remained unchanged since his June and July 2021 X-rays. Id. (DSUF 41); ECF No. 46-3 (Ma Decl. at ¶ 15-17), Ex. E. Defendant did not believe plaintiff's abdominal pain was caused by this foreign body but indicated he would see plaintiff as needed.

ECF No. 46-3 (Ma Decl. at ¶ 17), Ex. E.

Defendant saw plaintiff for a medical visit on November 12, 2021, due to plaintiff's complaints of abdominal pain. Id. (DSUF 43.) After plaintiff left that visit, defendant looked deeper into plaintiff's past medical records and noted the metal wire-like foreign body had actually been present in the same location in plaintiff's X-rays as far back as October 25, 2017, more than four (4) years prior. Id. Defendant "determined the wire that was showing up on his most recent X-rays could not be the one that Plaintiff swallowed on June 24, 2021," which SJGH records showed had been removed. ECF No. 46-3 (Ma Dec. at ¶ 18). Defendant also "did not believe that this wire could be the source of Plaintiff's abdominal pain, rather, I believed the foreign body was located outside of his abdominal or pelvic cavity, in soft tissue." Id. Even so, defendant ordered a CT scan of plaintiff's abdomen to verify the exact location of the object and evaluate the source of any abdominal pain. Id., Exs. F-G. Defendant resubmitted the request for plaintiff to have a CT, which was eventually approved. Id., Ex. G. [7]

Dr. Ma saw plaintiff for another medical visit on December 6, 2021, explained the upcoming CT scan of his abdomen, and recommended plaintiff use Tylenol instead of NSAIDS. ECF No. 46-1 (DSUF 48); ECF No. 46-3 (Ma Decl.), Ex. J. Plaintiff had a CT scan of his abdomen on January 12, 2022, with a third-party diagnostic radiological imaging provider who determined there was no foreign body anywhere in plaintiff's gastrointestinal tract. ECF No. 46-1 (DSUF 49-53); ECF No. 46-3 (Ma Decl.), Ex. K (January 12, 2022, CT scan results). Because of CDCR policies in effect at the time, limiting in-person medical visits to prevent the spread of COVID-19, defendant sent a letter to plaintiff explaining that the CT scan had not shown any foreign body in his gastrointestinal tract and recommending a follow up in April 2022. ECF No. 46-1 (DSUF 49-55); ECF No. 46-3 (Ma Decl.), Ex. L. Defendant asserts that despite this letter about the CT scan results, "I never advised Plaintiff that there was no foreign body seen on any other radiological films taken of Plaintiff's abdomen. In fact, the discussions I have had with

---

[7] Defendant's first Request for Services to get authorization for plaintiff to have a CT scan as medium priority (DSUF 45) was denied because given plaintiff's medical history and status, it should have been submitted as routine priority (46-90 days). ECF No. 46-1 (DSUF 46.)

Plaintiff, as reflected in my notes, is that a metallic foreign body has been noted continuously in Plaintiff's pelvic region, and that the same wire has been in the same location since 2017." ECF No. 46-3 (Ma Decl. at ¶ 29).

On March 9, 2022, plaintiff ingested additional foreign bodies. ECF No. 46-1 (DSUF 58). Defendant ordered X-rays which indicated that "[w]ithin the limitations, there is redemonstration of a 3 cm linear radiopaque foreign body projecting in the pelvis on single projection, as seen on 10/8/2021. This may localize to the posterior soft tissues on the lateral view, at the margin of the field-of-view." Id. (DSUF 59.) The results also indicated the presence of additional foreign bodies, likely those swallowed that morning. Id. Based on the results of these X-rays, defendant concluded that the 3-cm wire-like foreign body was most likely in plaintiff's buttock area, not in his pelvic area. Id. (DSUF 60; ECF No. 46-3 (Ma Decl. at ¶ 30), Ex. M. Defendant determined that plaintiff would likely be able to pass the additional foreign bodies he had ingested on March 9, 2022, and he ordered a follow-up appointment within 5 days and follow up X-rays within 3 days. ECF No. 46-1 (DSUF 61); ECF No. 46-3 (Ma Decl. at ¶ 29).

Plaintiff was unable to see defendant at his scheduled March 21, 2022, appointment because his housing unit was quarantined due to COVID. Id. (DSUF 63). Defendant reviewed the March 15, 2022, X-ray reports, which stated: "Needlelike foreign body projects over the pelvis, as before. The lateral view does not completely include the needle in the field-of-view. This may reside superficial to the sacrum as implied on the third image." Id. (DSUF 64). Defendant understood the radiologist to be stating that the 3-centimeter, wire-like object was likely in plaintiff's sacral or upper-buttock area. Id. (DSUF 65). Based on his review of the results, defendant noted in his progress notes: "the X-ray was not able to confirm whether these 2 foreign bodies are located inside of abdominal cavity or outside" and "I will repeat X-ray with AP and lateral view of KUB, plus a lateral view of the pelvis to locate those foreign bodies." Id.; ECF No. 46-3 (Ma Decl. at ¶ 34), Ex. O. In sum, defendant continued his efforts to pinpoint the location of the object.

////

////

E. CMF Providers Confirm the "Wire-Like" Object is located within Gluteal Muscle

Plaintiff was transferred back to CMF on April 11, 2022. Id. (DSUF 66). On May 4, 2022, a CT scan of plaintiff's abdomen and pelvis showed "a 2.8 cm linear radiopaque foreign body extending from the right gluteal crease along the posterior sacrum deep to the gluteal musculature." Id. (DSUF 67). Dr. Barchan reviewed the CT results with plaintiff, who denied inserting any foreign bodies in his buttock area and insisted the foreign body on the CT scan was the same body he had previously swallowed. Id. (DSUF 68). At a follow-up appointment on May 9, 2022, after plaintiff complained of pelvic pain, Dr. Barchan noted the same object had been repeatedly seen on X-rays. Id. (DSUF 69). Dr. Barchan showed plaintiff "images from CT which demonstrate[d] the foreign body [was] deep within the gluteal muscle." Id.; ECF No. 46-3 (Ma Decl. at ¶ 35), Exs. P (May 4, 2022 CT scan results), Q-R (Dr. Barchan's progress notes from his May 2022 visits with plaintiff).

During a May 19, 2022, appointment, Dr. Barchan noted that plaintiff had recently had a surgical consult with Dr. Ikegbu. ECF No. 46-1 (DSUF 71). Dr. Barchan confirmed that plaintiff had discussed with Dr. Ikegbu that the "foreign body [was] in the right gluteal muscle." Id. Dr. Barchan also confirmed that Dr. Ikegbu had recommended that if the area where the item was located remained asymptomatic, there was no indication for surgical removal. Id. Although Dr. Ikegbu recommended that Dr. Barchan conduct a rectal exam to make sure there was no infection where the foreign body was located, plaintiff refused any examination. Id. (DSUF 72); ECF No. 46-3 (Ma Decl. at ¶ 38), Ex. U.

On September 1, 2022, plaintiff had a medical visit with Dr. Sky Lee, who recorded in his progress notes, "Foreign body ingestion seen on Ct scan and KUB posterior sacral region. Seen in procedure clinic and decided for conservative management as [patient] was [asymptomatic]." ECF No. 46-1 (DSUF 73). Dr. Lee noted that his plan of treatment was "at next visit will check for inguinal hernia . . . as it may be the cause of pain, [especially] with straining." Id.; ECF No. 46-3 (Ma Decl. at ¶ 38), Ex. V (Dr. Lee's progress notes).

F. Follow Up Treatment with Defendant at CSP-Sacramento

On September 23, 2022, plaintiff was returned to CSP-Sacramento. ECF No. 46-1 (DSUF 74.) On September 28, 2022, plaintiff saw Dr. Sukhwinder Singh for a medical visit and did not complain of any abdominal pain. Id. (DSUF 75). Dr. Singh noted that plaintiff's records reflected a positive F.I.T. test from March 2022, but a negative F.I.T. test from a follow up test in April 2022. Id.; ECF No. 46-3 (Ma Decl. at ¶ 40), Ex. W (Dr. Singh's progress notes).

Defendant next saw plaintiff for a medical visit on October 21, 2022. ECF No. 46-1 (DSUF 76). At that visit, they discussed that plaintiff's most recent imaging confirmed the location of the metal wire in his sacral soft tissue area, i.e., his upper-buttock muscle. Id. Plaintiff denied any abdominal abnormalities but claimed he had pain in his sacral area. Id. Because of plaintiff's ongoing complaints of pain, defendant ordered a general surgery consult. Id.; ECF No. 46-3 (Ma Decl. at ¶ 42), Ex. X.

On November 18, 2022, defendant saw plaintiff for another medical visit during which plaintiff's chief complaint was knee buckling. ECF No. 46-1 (DSUF 77). Progress notes reflect that plaintiff did not raise any issues about the wire-like object or have any complaints of abdominal pain. Id. Similarly, during plaintiff's last medical visit with defendant on December 8, 2022, plaintiff only reported knee pain. Id. (DSUF 78). Defendant was not involved in plaintiff's medical care after the December 8, 2022, visit. Id. (DSUF 79); ECF No. 46-3 (Ma Decl. at ¶¶ 43-44), Ex. Y-Z.

G. Surgery Not Recommended

On March 10, 2023, plaintiff had a surgical consult with Dr. Nathaniel Matolo. ECF No. 46-1 (DSUF 80.) Dr. Matolo identified the foreign body as being located near the plaintiff's sacrum, and noted plaintiff's self-report that he had ingested many wires in 2021 and believes they had migrated. Id. Dr. Matolo recorded that plaintiff was "counseled extensively that this object is not nearby any critical structures that may cause him harm if left in place…[n]o surgical intervention is required." Id. Similarly, progress notes from plaintiff's March 23, 2023, visit with Dr. Meskath Uddin reflect plaintiff's "[h]istory of a small 3 cm retained foreign body in pelvic area since, per his history 2021, but Cerner documentation goes to as early as 10/25/2017.

Had surgical consultation on 3/10/2023 for possible removal, see note. Surgeon commented: Nothing needs to be done." Id. (DSUF 81). Dr. Uddin noted "no further work-up-intervention/follow-up needed." Id.

V. DISCUSSION

As noted above, to overcome defendant's motion for summary judgment, plaintiff must identify evidence sufficient to establish that defendant's failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain, and that defendant's response to plaintiff's serious medical need was deliberately indifferent, such as a purposeful act or failure to respond to his pain. See McGuckin, 974 F.2d at 1060. The court finds that plaintiff has not made this showing.

As set forth at length above, plaintiff has an unfortunate history of ingesting harmful foreign objects. Plaintiff's belief that the wire lodged in his throat in June 2021 was never properly removed by SJGH staff, migrated lower in his body, and continues to appear on X-rays of his pelvic region, appears to be sincere. ECF No. 1 at 5-6, 10, 18-19. However, the objective evidence and treatment notes in plaintiff's medical record contradict these allegations. Although plaintiff is correct that by the time of his procedure at SJGH on June 25, 2021, the wire was no longer simply lodged in his throat (ECF No. 1 at 18-19) but had traveled down to his upper intestines, the medical records clearly indicate the wire was successfully removed via an upper endoscopy procedure. ECF No. 46-3, Ex. B at 25-49. There is no evidence to substantiate plaintiff's conclusory allegations that SJGH failed to remove the object or subsequently canceled his procedure.

There is also no evidence indicating that Dr. Ma attempted to "cover up" negligence by SJGH providers after plaintiff was transferred back to CSP-Sacramento. In his initial treatment of plaintiff after he returned to CSP-Sacramento, defendant relied upon the medical records from SJGH, which confirmed removal of the wire. ECF No. 46-1 (DSUF 25-28). Defendant had no connection to or interactions with plaintiff's treating providers at SJGH, and no reason to believe the SJGH records regarding removal of the wire were inaccurate. ECF No. 46-3 (Ma Decl. at ¶¶ 5-9).

Similarly, contrary to plaintiff's allegation that defendant falsified or ignored a positive FIT test result from November 12, 2021 (ECF No. 56 at 4-6) as part of his "cover up" efforts, there is no evidence in the medical record that plaintiff had a positive FIT test reflecting blood in his stool in November 2021. ECF No. 46-3 (Ma Decl. at ¶ 20). Plaintiff did have a positive FIT test in March 2022, after he swallowed additional foreign bodies, but he refused a March 30, 2022, follow up FIT test. ECF No. 46-1 (DSUF 35); ECF No. 46-3 (Ma Decl.), Ex. I. Plaintiff's follow-up FIT test in April 2022 was negative. ECF No. 46-3 (Ma Decl. at ¶ 22). There is no evidence that defendant falsified any of plaintiff's test results or records or had any motivation to do so.

Further undermining plaintiff's allegations of a "cover up" of SJGH's negligence by defendant, plaintiff's medical record contradicts his allegation that the 3 cm "wire-like" object that continues to appear on X-rays was the same wire plaintiff swallowed on June 24, 2021. As noted above, X-rays of plaintiff's abdomen from October 25, 2017, and August 24, 2019, showed the 3 cm object in the same location, several years before the events at issue in this case. ECF No. 46-1 (DSUF 4-5, 8-9, 11). Although plaintiff contends the 3 cm object could not be the same one that has appeared on his abdominal X-rays since at least October 2017 because "in 2017 I swallowed only glass. No wire-like object until [June 24, 2021]" (ECF No. at 1 8), the fact remains that plaintiff's medical providers have noted the same 3 cm "wire-like" metallic object in the same location for years prior to plaintiff's June 2021 procedure at SJGH. ECF No. 46-1 (DSUF 11, 43); ECF No. 46-3 (Ma Decl. at ¶¶ 18, 30-35), Exs. F, P. In sum, no rational jury could find that Dr. Ma engaged in a cover up because no evidence supports that theory.

Plaintiff has also failed to raise a triable issue as to the care provided by Dr. Ma. Plaintiff has identified no evidence which could support a jury finding that Dr. Ma failed to adequately respond to plaintiff's reported symptoms or possible medical need. As soon as defendant was assigned as plaintiff's primary care provider in October 2021, he observed the wire-like object in plaintiff's July 2021 abdominal X-rays. ECF No. 46-1 (DSUF 36); ECF No. 46-3 (Ma Decl. at ¶ 12), Ex. D. Plaintiff's July and October 2021 X-ray findings were the same, and plaintiff was not complaining of pain. ECF No. 46-1 (DSUF 38); ECF No. 46-3 (Ma Decl. at ¶ 14), Ex. D. When

plaintiff did complain of pain and express concern about a foreign body he had ingested in June 2021, defendant looked deeper into plaintiff's past medical records and noted the metal wire-like foreign body had actually been present in the same location in plaintiff's X-rays as far back as October 25, 2017. ECF No. 46-1 (DSUF 43); ECF No. 46-3 (Ma Dec. at ¶ 18), Ex. F. Although defendant did not believe the object was the cause of plaintiff's symptoms, he ordered a CT scan of plaintiff's abdomen to verify the exact location of the object and evaluate the source of any abdominal pain. ECF No. 46-3 (Ma Decl.), Exs. F-G. Defendant subsequently notified plaintiff in writing – accurately – that the CT scan verified there were no objects within his gastrointestinal tract. ECF No. 46-1 (DSUF 55); ECF No. 46-3 (Ma Decl.), Exs. F-G.[8]

After plaintiff swallowed additional objects in March 2022, Dr. Ma ordered X-rays and determined that plaintiff should be able to pass the new foreign bodies he had ingested. ECF No. 46-1 (DSUF 57-61); ECF No. 46-3 (Ma Decl. at ¶¶ 30-32), Ex. M. The X-ray results also indicated the 3 cm object could be in plaintiff's buttock area, not his pelvic region. ECF No. 46-1 (DSUF 65; ECF No. 46-3 (Ma Decl. at ¶¶ 34), Ex. O. Defendant continued to order additional diagnostic testing to verify the exact location of the object and that it was not the cause of plaintiff's pain complaints. Id. After additional imaging (and a CT scan) verified the metal wire was in plaintiff's sacral soft tissue area, i.e., his upper-buttock muscle, defendant ordered a general surgery consultation in response to plaintiff's ongoing pain complaints. ECF No. 46-3 (Ma Decl. at ¶¶ 41-42), Ex. X.

In sum, the medical record reflects that plaintiff continues to have a 3 cm metallic object lodged in his gluteal muscle. Although plaintiff's earlier X-ray imaging (which is two-dimensional) suggested the foreign body might be in his "pelvic region," plaintiff's subsequent (three-dimensional) CT scans confirmed the object's location in plaintiff's upper buttock area, outside of the pelvic cavity and plaintiff's gastrointestinal tract. ECF No. 46-1 (DSUF 82-87).

[8] Because COVID-19 restrictions prevented plaintiff and defendant from meeting in person to discuss the CT scan results, plaintiff may have misunderstood defendant's written notification as denying presence of the metallic object in his abdomen and not only in his gastrointestinal tract. Defendant maintains that during all his discussions with plaintiff, he consistently explained that diagnostic radiology tests continuously noted the metallic object was present since 2017. ECF No. 46-1 (DSUF 57); ECF No. 46-3 (Ma Decl. at ¶ 30), Ex. M.

Nothing in the record before the court could support a conclusion that Dr. Ma failed to treat any of his plaintiff's symptoms or complaints, or take appropriate action, resulting in significant injury or the unnecessary and wanton infliction of pain. To the contrary, defendant promptly identified the metallic object on plaintiff's X-rays in October 2021, repeatedly pursued authorization for additional diagnostic testing (X-rays and CT scans) to pinpoint the object's location, provided follow-up visits and pain medication, communicated with plaintiff regarding his test results, and referred plaintiff for a surgical consultation. Although defendant was not able to identify the cause of plaintiff's reported abdominal pain, he determined in his medical judgment that the 3 cm object in plaintiff's gluteal muscle since 2017 was not the likely cause of his symptoms. ECF No. 46-3 (Ma Decl. at ¶ 47). Plaintiff's other medical providers have consistently agreed with defendant's conclusion, as plaintiff has been counseled by multiple providers that the object is not in a harmful location, which is why surgery was not recommended. ECF No. 46-1 (DSUF 68-73, 80-81). While the court is sensitive to plaintiff's discomfort in knowing this object remains lodged in his body, the evidentiary record directly contradicts plaintiff's allegation that Dr. Ma has acted with deliberate indifference to his medical needs or caused him harm.

On this record, no rational jury could find that Dr. Ma acted with deliberate indifference to plaintiff's serious medical needs. Plaintiff has not shown that he is competent to provide expert opinions on the standards and appropriateness of the treatment provided, and he has offered no other evidence supporting his claims that Dr. Ma's course of treatment presented an excessive risk to his health and safety. Inadvertent failure to provide adequate medical care, negligence, medical malpractice, delayed care (without more), and differences of opinion about proper medical treatment are all insufficient to constitute an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 105–07 (1976). Absent any competent evidence, plaintiff's arguments amount to nothing more than a difference of opinion that cannot support a claim of deliberate indifference as a matter of law. See Toguchi, 391 F.3d at 1058.

Plaintiff having failed to establish a dispute of fact regarding whether Dr. Ma was deliberately indifferent to his medical needs, defendant is entitled to summary judgment.

VI. PLAIN LANGUAGE SUMMARY FOR A PRO SE LITIGANT

Defendant's motion for summary judgment is being granted because there is no evidence that shows the care and treatment provided by Dr. Ma was medically unacceptable or constituted deliberate indifference to your medical needs. Summary judgment means that judgment will be granted to defendant without a trial, because you do not have enough evidence to go to trial.

CONCLUSION

Accordingly, for the reasons explained above, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment (ECF No. 46) is GRANTED; and
2. The Clerk shall enter judgment in defendant's favor and close this case.

DATED: September 29, 2026

Allison Claire

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE